**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

v.                                                    **Criminal Case No.: 2:00-CR-7-1**
                                                      **(JUDGE KLEEH)**

**RICHARD ALLEN SMITH, JR.,**

**Defendant.**

**REPORT AND RECOMMENDATION RECOMMENDING**
**GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

This matter was referred by Order of the Court to the undersigned United States Magistrate Judge to consider the record and enter a written report and recommendation as to the appropriate disposition of the motion. [ECF No. 1589 at 2]. Pending is Defendant Richard Allen Smith, Jr.'s Emergency Renewed Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Finding that Defendant's advanced respiratory conditions, as magnified by numerous other comorbidities and the COVID-19 pandemic, constitute an extraordinary and compelling reason to modify his term of imprisonment, the undersigned **RECOMMENDS** the Defendant's motion be granted.

**I. PROCEDURAL BACKGROUND**

On April 14, 2020, Defendant filed a *pro se* motion seeking a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [ECF No. 1577]. The Court denied this motion in an Order entered on April 23, 2020 on the grounds that the Defendant had not yet exhausted his administrative remedies through the Bureau of Prisons ("BOP") as required. [ECF No. 1578].

1

On April 30, 2020, Defendant Smith submitted a written request to the Warden of FCI Hazelton requesting the Warden recommend the BOP move for a reduction of his sentence and for compassionate release in light of his preexisting conditions and the risks posed to him by the COVID-19 pandemic. [ECF No. 1585-3]. On May 22, 2020, the Warden denied Mr. Smith's request. [ECF No. 1585-4].

On July 15, 2020, the Defendant, by counsel, filed an Emergency Motion for Release from Custody on the grounds that his numerous conditions, including a partially removed lung, Black Lung Disease, Chronic Obstructive Pulmonary Disease ("COPD"), emphysema, prolonged QT syndrome, pre-diabetes, a cyst on his liver, arthritis in both knees, and recurring kidney infections, place him at a high risk of severe illness or death if exposed to COVID-19. Specifically, Defendant argues that his conditions of confinement[1] pose a serious coronavirus risk and that these present exceptional and compelling circumstances are a grave threat to Defendant Smith's life. Furthermore, Defendant asserts that this high-risk environment substantially diminishes his ability to provide self-care for his medical conditions and act for himself to prevent further serious injury. Defendant contends that his significant rehabilitative efforts during incarceration and low risk of recidivism, especially considering his age and medical conditions, further support his release.

Additionally, Defendant argues that the consecutive stacking of sentence enhancements for offenses under 18 U.S.C. § 924(c) has been the subject of great legal scrutiny in recent months and, therefore, should be reconsidered here. Defendant urges that "[t]he fact that Mr. Smith would likely not receive the same sentence today is a valid consideration for resentencing, especially in light of Mr. Smith's personal health issues and the COVID-19 pandemic." [ECF No. 1585 at 23].

---

[1] Defendant states that he lives in "close quarters that make social distancing a literal impossibility – indeed Mr. Smith is currently housed with another inmate within the confines of an approximately twelve-foot-by-eight-foot cell and shares all showers, toilets, and sinks." [ECF No. 1585 at 13].

On September 10, 2020, the Government filed its response to Defendant's motion. The Government confirmed that Defendant has exhausted his administrative remedies for the purposes of 18 U.S.C. § 3582(c)(1)(A). [ECF No. 1590 at 4].

The Government further concedes that "during the COVID-19 pandemic, the defendant's chronic medical condition, specifically COPD, presents a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[.]" Id. However, the Government argues that the Defendant is safe and that the "BOP has taken aggressive steps to protect inmates health during the pandemic, by limiting access to prisons, restricting prisoner movements and maximizing social distancing, screening and testing and educating inmates and staff, providing masks and hand sanitizers, and separating inmates who manifest signs of the disease." [ECF No. 1590 at 2].

The Government argues that Mr. Smith's behavior, both as an inmate and in the underlying offense, weigh against Defendant Smith's early release and support the sentence conferred. The Government notes that Defendant was twice disciplined in 2018 for being insolent. [ECF No. 1590 at 5]. Moreover, Defendant has a prior conviction for domestic battery. Id. The Government further declares that, as a legal principle, this Court should not entertain Defendant's arguments regarding increased scrutiny of sentencing under 18 U.S.C. § 924(c). Id. The Government argues that a compassionate release proceeding is not the appropriate tool for challenging the sentencing statute and that "while the First Step Act made changes to § 924(c)'s sentencing structure, Congress did not make those changes retroactive." Id. Lastly, the Government asserts that "[a]s a factual principle, Smith's conduct – placing a barrel of a pistol into the chin of an undercover agent – was deserving of the hefty consecutive sentence." Id.

The Government summarizes that "because Smith is safe at FCI Hazelton and dangerous outside the prison, the United States asks that Smith's motion be denied." [ECF No. 1590 at 5-6].

In a reply filed on September 17, 2020, Defendant answers that the Government is (1) incorrect that the Defendant is safe at Hazelton, (2) incorrect in asserting that, based on conduct occurring more than twenty years ago, that the Defendant remains a danger to the community, and (3) incorrect that the Court should not consider any disparity between Mr. Smith's stacked sentence and the sentence he would receive today after the passage of the First Step Act. [ECF No. 1591 at 1].

First, Defendant insists that Hazelton, despite a seemingly low COVID-19 rate, still poses a great risk to Defendant. Defendant cites comments and concerns by Richard Heldreth, president of Local 420 of the American Federation of Government Employees, and suggests that a lack of testing by the U.S. Marshals Service prior to transferring inmates between correctional facilities greatly increases the odds of COVID-19 infections at facilities like USP Hazelton and FCI Hazelton. Defendant further suggests that the active cases of COVID-19 at USP Hazelton and FCI Hazelton are likely much higher than the number reported due to inadequate testing at the facilities. Defendant explains that COVID-19 need not be widespread in number at FCI Hazelton to constitute a dangerous environment for Mr. Smith, considering the "[l]imited COVID-19 testing and medical resources combined with crowded living conditions." [ECF No. 1591 at 8]. Defendant indicates that "gloves are not being utilized by corrections officers who bring him meals[,]" "corrections officers are not wearing masks properly . . . or not wearing masks at all[,]" and that "temperature checks had not been performed in over three weeks[.]" Defendant argues the lack of minimum preventative measure is cause for great alarm, and federal courts across the country

recognize that prisons cannot be made safe for particularly vulnerable inmates such as Defendant. [ECF No. 1591 at 9].

Second, Defendant provides details regarding his criminal history and his disciplinary record while incarcerated and posits that he does not present a risk to the community. Defendant claims that the 2018 discipline for being "insolent" occurred because Defendant refused to provide information to a corrections officer regarding a name-calling incident and that Defendant's silence was motivated by concerns of retaliation from other inmates. Defendant offers that he overall has had an "exemplary record during his incarceration." [ECF No. 1591 at 3]. Defendant has successfully completed various vocational classes,[2] drug education classes and the CODE Program. Defendant notes that the domestic battery conviction referenced by the Government occurred in 1992, almost 30 years ago. While Defendant appreciates that the crimes under which he was convicted are serious, he argues that his "good behavior and the recognition he has received for it demonstrates his readiness for a productive life outside the walls of FCI Hazelton." [ECF No. 1591 at 5]. Defendant suggests "[h]e does not present any danger at this time to the community at large, on the contrary, Mr. Smith would be a positive addition to his family outside the walls of FCI Hazelton." [ECF No. 1591 at 6].

Third, Defendant supplies examples from sister courts within the Fourth Circuit who found that sentence disparities between the sentence originally imposed and the sentence that would now be imposed after changes under the First Step Act of 2018 may and should be considered for the purposes of a compassionate release assessment. [ECF N0. 1591 at 10].

---

[2] Defendant has completed vocational training courses in ACE Real Estate, Stock Investing, Bio-Hazardous Material Handling and Removal, the 8 Habits of Highly Successful People, Beginning Typing, Advanced Typing, Softball Umpire Officials Clinic, Basketball Referee Officials Clinic, Yoga, Heart Health, and Fitness.

In a Status Update and Supplement to Reply filed on September 24, 2020, Defendant offers that his custody classification now reflects that he has a security designation of "Low," allowing for him to be designated to "Low" security federal facilities. [ECF No. 1592 at 1]. Defendant also provides that COVID-19 "[t]esting is not being conducted regularly (and has not been conducted in over five weeks); social distancing is not practiced, and hand sanitizer is not readily available." Id.

## II. APPLICABLE LAW

Pursuant to 18 U.S.C. § 3582(c), the Court may not modify a term of imprisonment except in limited circumstances. One circumstance, known as the compassionate release provision, permits a court to reduce a term of imprisonment where it finds "extraordinary and compelling reasons" for a reduction. § 3582(c)(1)(A)(i). In addition to a sentence reduction, the statute grants the Court discretion to impose a term of supervised release with a condition of home confinement that does not exceed the unserved portion of the original term of imprisonment. §3582(c)(1)(A).

Under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), Congress amended the statute to permit a compassionate release motion to be filed not only by the Director of the Bureau of Prisons ("BOP"), but also by a defendant, "after the defendant has exhausted all administrative rights to appeal the BOP's failure to bring such a motion or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Although the statute does not define the terms "extraordinary and compelling," it requires that any reduction in sentence be consistent with applicable policy statements of the United States Sentencing Commission. § 3582(c)(1)(A)(ii); §944(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and specific examples."). Accordingly, the relevant policy

6

statement, U.S.S.G. § 1B1.13, and its commentary set forth the various bases on which a court may rely to find "extraordinary and compelling" circumstances. Id.

The Sentencing Commission has included as a basis for compassionate release "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13 cmt. n.1(A)(ii). Age may also provide a basis for release where the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G § 1B1.13 cmt. n.1(B).

Another "catch-all" provision provides for compassionate release for "other reasons" as determined by the BOP. U.S.S.G § 1B1.13 cmt. n.1(D).[3]

Even if a court finds extraordinary and compelling reasons to reduce a sentence of imprisonment, the guideline policy statement also requires that courts weigh any applicable factors under 18 U.S.C. §3553(a), and not permit a defendant to be released from imprisonment unless he or she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G § 1B1.13(2).

---

[3] The policy statement refers only to motions brought by the BOP. This is because the Sentencing Commission has not updated § 1B1.13 to reflect the procedural changes implemented by the First Step Act which permit defendants to move for compassionate release. Although the Court is not bound by the policy statement with regard to how it may exercise its discretion pursuant to the statute, the policy statement provides helpful guidance. See United States v. Haynes, __ F. Supp. 3d __, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (outlining cases which recognize that, following the First Step Act, courts may determine whether extraordinary and compelling reasons exist to modify a sentence under the catch-all provision; United States v. Almontes, No. 3:05-cr-59 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020) (finding policy statement is not binding, but, rather helpful guidance); United States v. Rodriguez, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4-6 (E.D. Pa. Apr. 1 2020) (finding Court has discretion to assess reasons other than those listed in the policy statement); United States v. McGraw, No. 2:02-cr-0018-LJM-CMM, 2019WL 2059488, at *2 (S.D. Ind. May 9, 2019) (explaining that the identity of the movant has no impact on the factors a court considers).

## III. DISCUSSION

### A. Defendant Smith has exhausted his administrative remedies.

As an initial matter, the parties agree that Mr. Smith has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Defendant Smith submitted the necessary request to the Warden of FCI Hazelton on April 30, 2020 and was denied his request. This Court can now proceed to the question of whether Defendant Smith is entitled to relief on the merits.

### B. Defendant's serious medical conditions, standing alone and in light of increased COVID-19 risks, serve as an extraordinary and compelling basis for compassionate release.

1. *Defendant's serious medical conditions diminish his ability to provide self-care within the environment of a correctional facility.*

The parties further agree that Defendant's health conditions constitute a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Specifically, the Government has conceded that "the defendant's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by this chronic medical conditions and sets forth an 'extraordinary and compelling' reason for the purposes of 18 U.S.C. §3582(c)." [ECF No. 1585-6].

To be certain, the Court notes that Defendant is sixty-six years old and has numerous, serious and debilitating diagnoses. Defendant worked as a coal miner, specifically a roof bolter, for eighteen years. [ECF No. 1585 at 4]. In 1990, as a direct result of workplace exposure, Defendant's lung collapsed, and he underwent a lung lobectomy, which removed a portion of his right lung. Id. at 5. Defendant has been diagnosed as having Black Lung Disease, Chronic

Obstructive Pulmonary Disease ("COPD"), and emphysema. Defendant was hospitalized for community-acquired bacterial pneumonia as recently as September 2019. Id. at 7. He has also been diagnosed with the heart condition of prolonged QT syndrome, where the heart's electrical activity can cause dangerous and sudden arrhythmias. Defendant also has pre-diabetes, a cyst on his liver, arthritis in both knees, joint disorder in his left shoulder, recurring kidney infections, and age-related cataracts.

The undersigned finds, based upon the uncontested medical evidence presented, that Defendant Smith has a basis for compassionate release due to his serious medical conditions, specifically his respiratory conditions, which substantially diminish his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.

2. *Defendant has a particularized susceptibility to COVID-19 and a particularized risk of contracting the virus which should be considered.*

Defendant "asks this Court to consider the conditions of confinement, in conjunction with his personal medical issues and the unique risks to him brought on by the COVID-19 pandemic in determining whether a sentence reduction is warranted under 18 U.S.C. §3582(c)(1)(A). [ECF No. 1585 at 18].

The Government argues, however, that the Defendant is safe to remain at FCI Hazelton and should remain at FCI Hazelton, despite the extraordinary and compelling circumstances, because he is a danger to the safety of the community.

In United States v. Raia, 954 F.3d 594 (954 F.3d (3d Cir. 2020), where a defendant presented with Parkinson's disease, diabetes, and a heart condition, the Third Circuit explained that the "mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering

the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Id. at 597. Federal District Courts, however, have found extraordinary and compelling reasons for granting compassionate release when an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the virus. See United States v. Dungee, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020) (denying motion for compassionate release because a defendant failed to show that his "individual conditions of confinement . . . justify relief"); United States v. Edwards, 2020 WL 1650406, at *5 (W.D. Va. April 2, 2020) (finding that immunocompromised inmate with brain cancer housed at a facility with COVID-19 cases had shown compelling reasons for release).

District Courts have increasingly deferred to and relied upon the Centers for Disease Control ("CDC") guidance for accessing COVID-19 risk factors and susceptibilities and determining whether a medical condition constitutes "extraordinary and compelling" reason for release. United States v. Kelley, No. 2:18-CR-00200-6, 2020 WL 5665067, at *3 (S.D.W. Va. Sept. 22, 2020) (Goodwin, J.) ("In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. Using CDC guidance will allow for more predictable standards in deciding which defendants have 'extraordinary and compelling' reasons justifying release."). See also, e.g., United States v. Salvagno, 456 F.Supp.4d 420, 426 (N.D.N.Y. 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); United States v. Adeyemi, No. CR 06-124, —— F.Supp.3d ——, ——, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); United States v. Frazer, No. CR 19-110, 2020 WL 2404893, at

*2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

The CDC advises that older adults and people with medical conditions are at an increased risk for severe illness. CDC, People Who Are at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited November 23, 2020). The CDC specifically lists COPD and heart conditions as medical conditions that increase risk for severe illness from the virus that causes COVID-19. CDC, People with Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 23, 2020).

In United States v. Smith, the Northern District of Iowa utilized the CDC's risk classifications a framework by which to assess COVID-19 factors for the purposes of compassionate release. United States v. Smith, 464 F. Supp. 3d 1009 (N.D. Iowa 2020). The court held that, while the Defendant's COPD and stage IIIA non-small cell lung cancer, standing alone, constituted extraordinary and compelling reasons for compassionate release, the COVID-19 pandemic made the Defendant's situation even more extraordinary and more compelling. In Smith, the court had previously sentenced Defendant to life in prison on one count of conspiracy to distribute 500 grams or more of methamphetamine mixture following at least two felony drug convictions and using a minor to distribute methamphetamine mixture *and* 60 months on one count of possession of a firearm in furtherance of a drug trafficking crime, to be served *consecutively* to life in prison. Smith, 464 F. Supp. 3d at 1011. Moved by that defendant's extraordinary poor health, twelve years already served, and limited risk of danger posed to the community, despite the

seriousness of the defendant's offenses,  the defendant was found to be eligible for compassionate release and released to serve a ten-year term of supervised release. Smith, 464 F. Supp. 3d at 1026.

Defendant in the instant case correctly noted in his motion that the U.S. District Court for the Northern District of West Virginia has granted compassionate release in similar circumstances under the First Step Act and in response to the dangers that COVID-19 poses to inmates. United States v. Dwight Knibbs, No. 5:90-CR-122-2, Dkt. No. 221 at *3 (N.D. W.Va. June 2, 2020) (Bailey, J.). The United States District Court for the Southern District of West Virginia has likewise granted compassionate release motions under the reasoning that jails and prisons within our state constitute a heightened risk to those already susceptible. United States v. White, 2020 WL 3244122, at *4 (Goodwin, J.) (granting a defendant by an FCI Elkton inmate's motion for immediate compassionate release due to health concerns – the inmate is immunocompromised and suffering from Hepatitis C, a liver disease.). Specifically, the Southern District has advised that "when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons." United States v. Kelley, No. 2:18-CR-00200-6, 2020 WL 5665067, at *3 (S.D.W. Va. Sept. 22, 2020)(Goodwin, J.).

Here, like in Smith, and as previously discussed, Defendant's health conditions standing alone constitute extraordinary and compelling reasons for compassionate release. In addition, Defendant qualifies as a person at increased risk for severe illness or death from COVID-19 considering he is an older adult who suffers from a partially removed lung, Black Lung Disease, Chronic Obstructive Pulmonary Disease ("COPD"), emphysema, prolonged QT syndrome, pre-diabetes, a cyst on his liver, arthritis in both knees, and recurring kidney infections. Defendant has both a particularized susceptibility to COVID-19 due to his severe underlying illnesses as well as

a particularized risk considering the conditions at FCI Hazelton. As described in his motion, "[t]he conditions of prison place limitations on Mr. Smith's ability to combat the virus: he is unable to practice social distancing, he has little to no control over the frequency his living areas are cleaned and sterilized; and he lacks adequate access to personal protective equipment." [ECF No. 1585 at 17]. When considered together, these circumstances make Defendant's situation more extraordinary and more compelling and serve as the basis for compassionate release.

Given the BOP's efforts to protect its prison population from exposure to COVID-19, the Court must also weigh Defendant's relative safety from contracting COVID-19 while incarcerated against his release into a community rife with the virus. See United States v. Wright, No. 17-CR-695, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 2020) (evaluating whether defendant is at any greater risk of contracting the virus inside the correctional facility than outside the correctional facility); United States v. Mattingley, No. 6:15-cr-5, 2020 WL 2499707, at *4 (W.D. Va. May 14, 2020); United States v. Esparza, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); United States v. Stephens, 447 F.Supp.3d 63, 65, (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large).

Currently, the BOP reports that at FCI Hazleton, there is one active case of COVID-19 among the inmate population and three cases among staff. At USP Hazleton, there are two active cases of COVID-19 among the inmate population and seven active cases among staff.[4] Alternatively, if released, Defendant plans to live initially with and under the care of his family in Piedmont, West Virginia. [ECF No. 1585 at 20]. Defendant's motion outlines his hopes to

---

[4] See Federal Bureau of Prisons, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited November 24, 2020).

quarantine and live in Piedmont then transition and later live with his daughter and grandchildren in Keyser, West Virginia.

The risk of contracting the virus does not alone represent an independent extraordinary and compelling reason enough to reduce Defendant's sentence. Thousands of inmates within federal custody in the state of West Virginia face the same risk of COVID-19 within the confines of correctional facilities. Nevertheless, because of the unknown length, duration, and nature of the COVID-19 pandemic, Defendant's particularized susceptibility to COVID-19 due to his grave respiratory ailments, and Defendant's inability to self-care and guard against COVID-19 exposures while within the correctional facility, the undersigned finds extraordinary and compelling circumstances justifying compassionate release and a reduction in sentence.

**C. Defendant likely does not pose a danger to any other person or the community considering his age, diminished physical health, and significant rehabilitative efforts while incarcerated.**

Title 18 of the United States Code, Section 3582(c)(1)(A) requires this Court to find that Defendant's release would not pose a danger to the community.

Defendant argues that his age and health conditions make it unlikely that he could present a danger to the community. Defendant correctly notes the Fourth Circuit has recognized that "the risk of recidivism is inversely related to an inmate's age" and has found that data regarding recidivism for adults over 45 is "compelling." See United States v. Howard, 773 F.3d 519, 533 (4th Cir. 2014). Defendant also offers that as an "at-risk and medically vulnerable individual" any risk or opportunity to reoffend is further deterred in the era of COVID-19. Defendant provides that he understands any transgressions could land him directly back in BOP custody and that "this is not an insignificant deterrent for those at increased risk of severe illness or death from COVID-

14

19[.]" Defendant also offers that he has a supportive family that can help him transition to life after incarceration and help to mitigate the risk of re-offense.

This Court may also consider a defendant's rehabilitative efforts for the purposes of Section 3553. See generally Pepper v. United States, 562 U.S. 476, 490 (2011). Defendant in the present case has taken numerous classes that aid to rehabilitate those who struggle with substance abuse, promote mental and physical health, and provide life skills. He has also taken a myriad of vocational classes on everything from Biohazardous Material Handling to Stock Investment. Defendant's active rehabilitative efforts extend throughout the entirety of his incarceration and indicate to the undersigned, the same as intent as noted by the Code Coordinator at USP Beaumont, "a sincere desire to make changes." [ECF No. 1585-7 at 11].

Here, the undersigned is persuaded that Defendant does not pose a present danger to the community. During his over twenty years of incarceration, Defendant has had minimal disciplinary reports and has made efforts to better himself through both vocational classes as well as rehabilitative drug treatment. Furthermore, Defendant's serious health conditions and age decrease the likelihood of recidivism.

**D. The Section 3553(a) factors weigh in favor of Defendant's release.**

1. *Analysis of the Factors*

Section § 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. Section 3553(a) requires the Court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission ...;]

(5) any pertinent policy statement [issued by the Sentencing Commission ...']

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The undersigned recognizes that several § 3553 factors, the nature and circumstances of the offense and the history and character of Defendant, weigh against compassionate release. Defendant likewise acknowledges that his conviction in the present offense is serious.

In 2002, Defendant was found guilty at trial of conspiracy to possess with intent to distribute more than fifty grams of cocaine base (count 1s) in violation of 21 U.S.C. § 846, §841(a)(1), and §841(b)(1)(A); two counts of being a felon in possession of a firearm (counts 5s and 44s), in violation of 18 U.S.C. §922(g); aiding and abetting the brandishing of a firearm during a drug crime (count 39s), in violation of 18 U.S.C. § 924(c); two counts of distribution of crack

cocaine (counts 40s and 41s), in violation of 21 U.S.C. § 841(a)(1); aiding and abetting the resisting of an officer (count 45s), in violation of 18 U.S.C. §§ 2 and 111; and an additional count of aiding and abetting the possession of a firearm during a drug crime (count 46s), in violation of § 924(c).

Defendant was sentenced to a total effective sentence of 646 months (or 53 years and 10 months). The Court reduced his sentence in 2009 pursuant to U.S.S.G §1B1.10, [ECF No. 1244], and, again in 2019, pursuant to the First Step Act of 2018, [ECF No. 1557]. Defendant's total effective sentence was reduced to 504 months (42 years). Id.

As the Government aptly notes, Defendant's relevant conduct included over 500 kilograms of crack cocaine. Moreover, Defendant placed the barrel of a pistol under the chin of an undercover officer. Pre-Sentence Report ("PSR"), Paragraph 60. Defendant also has prior felony convictions for Possession of Marijuana and Domestic Battery. PSR, Paragraphs 100 and 112.

Again, in United States v. Smith, 464 F. Supp. 3d 1009 (N.D. Iowa 2020), the District Court held that releasing a defendant with extraordinary and compelling respiratory ailments during the COVID-19 crisis who had only served twelve years of his life sentence was allowable under Section § 3582(c)(1)(A) and supported after weighing and comparing the § 3553(a). There, the defendant had a "lengthy criminal history, including some violence." Smith, 464 F. Supp. 3d 1024 (N.D. Iowa 2020). The defendant's underlying offense included controlled substance and directing a minor to have sex to pay off drug debts. However, the Court found the remaining §3553(a) factors outweighed the seriousness of the present offense and the defendant's criminal history. The Court there found the defendant's "most relevant personal characteristic is his poor health and vulnerability to COVID-19, and that weighs heavily in favor of release. . . . He has served much of his sentence while battling his health problems and experiencing significant pain.

This means that his sentence has been significantly more laborious than that served by most inmates." Id.

Like in Smith, the remaining § 3553(a) factors here outweigh the seriousness of the present offense and Defendant Richard Allen Smith, Jr.'s criminal history.

The Government argues that "to reflect the seriousness of his offense, promote respect for the law, and afford adequate deterrence, Smith should not be released after having served about one-half of his sentence." However, the undersigned notes that Defendant has been in federal custody since April 6, 2000 – having already served over twenty years. The time already served by Defendant serves to reflect the seriousness of the offense, provide for just punishment, and promote a respect for the law.

Furthermore, by releasing Defendant onto supervised release on conditions of home confinement, this Court can ensure that Defendant's sentence reflects the seriousness of his offense, promotes a greater respect for the law, and provides the oversight necessary to deter future criminal conduct.

The undersigned finds availability of supervised release under § 3553(a)(3) and the need for the sentence imposed to allow for Defendant's effective medical care under § 3553(a)(2)(D) weigh most heavily in favor of compassionate release under these circumstances. Because the factors weigh in favor of reducing Defendant's sentence and imposing a term of supervised release, it is recommended that the Court grant Defendant's Motion.

2. *First Step Act of 2018*

Changes in sentence calculations under the First Step Act of 2018, while not dispositive here, are a valid consideration which further supports granting Defendant's compassionate release motion.

Section 403 of the First Step Act of 2018 amended 18 U.S.C § 924(c) to eliminate consecutive stacking as previous required for violations of 924(c):

> [Before the First Step Act], one § 924(c) count carried a five-year minimum sentence that must be served consecutively. An additional § 924(c) count required the district court to tack on another twenty-five years in prison, even though that gun possession occurred during the same course of conduct as the original count....
>
> The [First Step Act] clarified that § 924(c) counts can only be stacked if the second offense occurs after a final conviction on the first offense. § 403(a), 132 Stat. at 5221-22. In other words, if sentenced today, a court would add only five years to [a defendant's] sentence ..., not thirty.

United States v. Brown, 411 F. Supp. 3d 446, 453 (S.D. Iowa 2019), order amended on reconsideration, 457 F. Supp. 3d 691 (S.D. Iowa 2020).

Recent jurisprudence provides that while changes to the First Step Act are "in no way dispositive," such changes to sentencing structures are worth noting and can be considered when weighing the §3553(a) factors for the purposes of compassionate release. United States v. Smith, 464 F. Supp. 3d 1009, 1025 (N.D. Iowa 2020) ("Additionally, while in no way dispositive, it is worth noting that if Smith were sentenced today, his mandatory minimum would no longer be life in prison.") In other words, this Court may compare and consider the sentence originally imposed against Defendant and what sentence would be imposed today for such a crime. See United States v. Maumau, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (granting compassionate release, and reducing defendant's 55-year sentence to time served as defendant would not receive the same sentence due to statutory changes); United States v. O'Bryan, 2020 WL 806121, at *1 (D. Kan. Feb. 21, 2020) (granting reduction because of the section 924(c) sentence stacking as defendant's twenty-five year sentence would now be ten years); United States v. Urkevich, No. 8:03CR37, 2019 WL 6037391, at *1 (D. Neb. Nov. 14, 2019), appeal dismissed, No. 20-1603, 2020 WL

5642024 (8th Cir. Apr. 1, 2020) (granting reduction because of the section 923(c) sentence stacking as defendant's 848-month sentence would be 368 months today).

Defendant was originally sentenced to 646 months. That sentence was subsequently reduced to 624 months [ECF No. 1244], then reduced further to a total effective sentence of 504 months. [ECF No. 1557]. The length of Defendant's sentence was the result of two mandatory minimums as well as required consecutive sentencing for his conviction for aiding and abetting the possession of a firearm during a drug crime (count 46) and his conviction for aiding and abetting the brandishing of a firearm (count 39) during a drug crime. [ECF No. 1585 at 21].

In his motion, Defendant notes that if he were convicted for the same charges today, aiding and abetting the possession of a firearm during a drug crime (count 46) and his conviction for aiding and abetting the brandishing of a firearm (count 39), he would have received a total of 144 months (twelve years) to be served consecutively to his narcotics conviction which was eventually reduced to a 120 month sentence (ten years).

In other words, if Defendant were sentenced today, he would be sentenced to a total effective sentence of 264 months (twenty-two years) rather than the 646 months (fifty-three years, ten months) originally imposed or the 504 (forty-two years) reduced sentence he is currently serving. **Thus, importantly, Defendant would have served the bulk of – or perhaps the entirety of – such a sentence had it been imposed under current standards.**

When considered together with the unique medical circumstances, the undersigned is inclined to find that the length of the sentence imposed and the fact that he would not receive the same sentence if the crime occurred today further supports the decision that there are extraordinary and compelling grounds to reduce Defendant's sentence.

## IV. CONCLUSION

20

After careful consideration of the record, including Defendant's criminal history, conviction, and sentencing factors as well as his advanced medical conditions and the exigent circumstances posed by the COVID-19 pandemic, the undersigned is of the opinion that a reduction in Defendant's imprisonment is warranted. The undersigned **RECOMMENDS** Defendant's motion be **GRANTED**.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide an authenticated copy of this Report and Recommendation to counsel of record.

**Respectfully submitted November 25, 2020**

Michael John Aloi
United States Magistrate Judge